**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Swift, | No. CV-18-01531-PHX-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Wesco Insurance Company, et al., | |
| Defendants. | |

Pending before the Court are five Motions in Limine: (1) Plaintiff's Motion in Limine re: Res Judicata of ICA Findings (Doc. 70); (2) Defendants' Motion in Limine re: Claims-Close Ratios (Doc. 72); (3) Defendants' Motion in Limine re: Per Diem Damage Calculations (Doc. 73); (4) Defendants' Motion in Limine re: Chiropractor Cradic (Doc. 74); and (5) Defendants' Motion in Limine re: Employee Discipline Records (Doc. 75).

**I.     Background**[1]

On February 28, 2017, Plaintiff slipped and was injured while working for Biltmore Properties as a maintenance technician at an apartment building in Yuma, Arizona. Plaintiff reported his injury to his supervisor, who informed Creative Business Resources ("CBR"), a company that handled human resources and workers'

---

[1] The factual background is adopted from the Court's July 13, 2020 summary judgment order. (Doc. 65.)

compensation matters for Biltmore Properties. CBR instructed Plaintiff to go to Pinnacle Healthcare to have his injury examined. Plaintiff states that he could not find Pinnacle Healthcare, and so instead went to Family and Injury Care. Plaintiff asserts that he chose to go to Family and Injury Care only because Biltmore had previously sent him there for treatment of a previous work-related injury. John Smock, a physician assistant with Family and Injury Care, examined Plaintiff and recommended certain temporary work restrictions. Plaintiff returned to work briefly but claimed that he continued to experience pain. His supervisor instructed him again to go to Pinnacle Healthcare, which he did. Marlena Lopez, a nurse practitioner with Pinnacle Healthcare, examined Plaintiff, confirmed his injury, and released him to light duty with work restrictions similar to those required by Physician Assistant Smock at Family and Injury Care.

The next day, CBR contacted Plaintiff and advised him that his employer was offering him a light duty position consistent with the restrictions approved by Pinnacle Healthcare, and that his rate of pay and scheduled work hours would remain the same. The same day, Plaintiff was evaluated by Chiropractor Donald Cradic, who had also previously seen Plaintiff after a prior work-related accident. Chiropractor Cradic gave Plaintiff a temporary "no work" status, and Plaintiff informed CBR that he would not return to light duty because of this recommendation.

On March 7, 2017, Plaintiff spoke with Sebastian Lara, a claims adjuster with his employer's workers' compensation carrier. Defendants state that Mr. Lara informed Plaintiff during that conversation that Plaintiff could not rely upon Chiropractor Cradic's "no work" recommendation unless he petitioned the Industrial Commission of Arizona ("ICA") for a change of treating doctor. Plaintiff denies that Mr. Lara said this. Plaintiff had previously gone through the process of officially changing his treating doctor but did not do so again because he believed he still had the right to choose his own doctor without going through this process.

In emails dated March 15 and March 17, CBR informed Plaintiff that his employer was revoking its offer of a light-duty position and was now requiring a "full duty release"

before he would be allowed to return to work. Defendant Lara was not contemporaneously copied on these emails. A letter from CBR to Plaintiff dated March 20, 2017, also explained that Defendants would require "a Fitness for Duty with 'no restrictions' form from your chiropractor before you return to an active work status." On March 21, 2017, Mr. Lara denied temporary compensation benefits, stating that Plaintiff's employer was able to accommodate the restrictions set by Nurse Practitioner Lopez. Mr. Lara states that he was not aware that Plaintiff's employer was now requiring a full duty release, and he asserts that he would have released temporary benefits to Plaintiff if he had known.

In late March 2017, Mr. Lara began receiving records from Chiropractor Cradic. On April 17, 2017, Mr. Lara scheduled Plaintiff to undergo a medical examination with John Beghin, MD, an orthopedic surgeon. After the examination and a later MRI, Dr. Beghin opined that Plaintiff did not need ongoing chiropractic care and that Plaintiff could perform light duty work with certain restrictions.

On May 18, 2017, Plaintiff filed a Request for Hearing challenging the denial of his temporary benefits. The Request for Hearing noted that Plaintiff's employer was not offering him light duty and that Plaintiff's doctor (i.e., Chiropractor Cradic) had him on temporary total disability. Mr. Lara received the Request for Hearing, and states that he "checked his file" to confirm that Plaintiff had been offered a light duty job but turned it down. Plaintiff asserts that whatever investigation Mr. Lara did was objectively unreasonable because he did not obtain or review CBR's communications to Plaintiff that a "full duty release" was required for Plaintiff to return to work.

On March 28, 2018, following hearings and the submission of evidence, an ICA Administrative Law Judge awarded Plaintiff temporary compensation benefits. The award became "final" after no objections were made after 30 days, and Mr. Lara paid the award on May 15, 2018, approximately 18 days later. Mr. Lara claims that the delay in paying the award was "unintentional" and happened because he "was used to receiving

awards like this directly from the industrial commission," but instead received this award from Plaintiff's attorney and so "inadvertently overlooked it."

Plaintiff brought this action alleging various claims arising out of Defendants' delay in paying Plaintiff's worker's compensation claims. (*See* Doc. 65.) Plaintiff's claims against Mr. Lara were dismissed. (*Id.*) Defendants moved for entry of summary judgment on Plaintiff's bad faith and punitive damages claims. (*Id.*) In a July 13, 2020 Order, the Court denied summary judgment as to Plaintiff's bad faith claim and granted summary judgment as to Plaintiff's claim for punitive damages. (*Id.*) The parties filed the Motions in Limine discussed herein and a pretrial conference was held on December 9, 2020, at which the Court heard oral argument on the Motions.

**II.     Motion in Limine re: Res Judicata of ICA Findings (Doc. 70)**

Plaintiff seeks to preclude Defendants from "introducing any evidence or making any argument disputing that [Plaintiff] suffered a compensable injury and was entitled to workers' compensation benefits." (Doc. 70.) Plaintiff argues that he "should not be required to re-litigate his workers' compensation claim and need of benefits," because the ICA issued findings and an award on March 28, 2018 confirming he was entitled to benefits, and the ICA's award is entitled to preclusive effect. (*Id.*)

Defendants respond that they do not intend to contest either Plaintiff's work-related injury or Plaintiff's entitlement to compensation as set forth in the ICA's March 28, 2018 award. (Doc. 84.) Defendants argue that the same preclusive effect given to that award should also be applied to the ICA's August 21, 2020 findings, including that Defendants had overpaid the amount of benefits owed to Plaintiff as of that date, that Plaintiff was capable of working 40 hours per week, and that Plaintiff's injuries resulted in a permanent partial disability equal to $421.88 per month, which Defendants are paying. (*Id.*) Defendants also argue that the ICA's March 28, 2018 award has no preclusive effect on Plaintiff's bad faith claim and should not restrict the evidence Defendants can present to defend against that claim. (*Id.*)

The Court ordered Plaintiff to file a Reply regarding the preclusive effect of the August 21, 2020 findings, and he did so on December 10, 2020. (Doc. 86.) Plaintiff's Reply indicates that he has no objection to the Court finding that the ICA's August 21, 2020 findings and award have preclusive effect. (*Id.*)

Claim preclusion, or res judicata, applies when: (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits. *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002). Because Defendants do not contest the preclusive effect of the March 28, 2018 ICA award and findings, the Court will grant Plaintiff's Motion in Limine re: Res Judicata of ICA Findings. The Court further finds that the August 21, 2020 award and findings likewise have preclusive effect. The parties may not re-litigate at trial any of the matters previously determined by the March 28, 2018 and August 21, 2020 ICA awards and findings.

### III.     Motion in Limine re: Claims-Close Ratios (Doc. 72)

Defendants seek to preclude Plaintiff from making any argument based on claims-close ratios or eliciting any testimony regarding claims-close ratios. (Doc. 72.) The term "claims-close ratios" refers to "a comparison of opened claims versus closed claims." (*Id.*) Thus, a claims-close ratio of 100% would mean that for every new claim opened, another claim is closed. (*Id.*)

The evidence pertaining to claims-close ratios is based on the deposition of Sebastian Lara ("Lara"), the insurance claims adjuster who worked on Plaintiff's workers' compensation claim. (Doc. 72-1.) During Lara's deposition, Plaintiff's attorney elicited testimony about Defendants' claim-close ratios. (*Id.*) Lara testified in relevant part that, based on his industry experience, a 100% claims-close ratio is the standard in the industry and that that is what he strives for as a claims adjuster. (*Id.*) Lara testified that he did not know if his claims-close ratio had any impact on his raises or bonuses. (*Id.*) Defendants argue that Plaintiff intends to use Lara's testimony to argue that claims-

close ratios are evidence of Defendants' bad faith.

Defendants urge the Court to preclude such arguments because: (1) an average lay-person would lack knowledge about claims-close ratios and therefore expert testimony on the subject would be required, and Plaintiff has not disclosed expert witness testimony about claims-close ratios; (2) there is no evidence that Defendants had a specific claims-close ratio as a goal or whether such a goal was appropriate, therefore any testimony or argument to that end would be irrelevant and prejudicial; and (3) because Plaintiff's claim was never closed, even if Defendants did employ a claims-close ratio, it could not have affected Plaintiff's claim. (Doc. 72.)

Plaintiff opposes the Motion and contests the factual bases of Defendants' arguments. (Doc. 80.) Plaintiff argues, citing Lara's deposition testimony, that "Defendants established an arbitrary incentive to motivate its adjusters to close claims – a 100% claims closed ratio" and that "there was a financial incentive tied to this claims-closed ratio through annual evaluations for bonuses that included the claims closed ratio." (*Id*.) Plaintiff also references Lara's case notes, which Plaintiff characterize as "document[ing] Lara's motivation to close the claim at the exact time he was engaging in the bad faith conduct in this case." (*Id*.) Plaintiff argues that applicable case law permits this type of evidence and argument to support a bad faith claim. (*Id*.) Finally, Plaintiff argues that Defendants' motion is undercut by the Court's prior discussion of the claims-close ratio evidence in its summary judgment Order. (*Id*.)[2]

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

---

[2] The Court's summary judgment Order stated that "courts have [] held that an insurer's linking of employees' compensation to claim processing goals may be probative of bad faith." (*See* Doc. 65 at 6.)

- 6 -

Evidence that Defendants established an arbitrary incentive to achieve a 100% close-claims ratio may support a bad faith claim. *See Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1009 (D. Ariz. 2013) (finding that "setting arbitrary goals for reduction in claims paid or linking salaries and bonuses to claim payouts can be unreasonable" and therefore evidence of an insurance company's bad faith). The Court finds that expert testimony is not required for claims-close ratio evidence to be admissible, as the claims-close ratio concept is not complex and would be within the understanding of a typical juror. *Accord Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-CV-1257 GMNPAL, 2010 WL 3724896, at *4 (D. Nev. Sept. 17, 2010) ("While there is no definitive authority in the Ninth Circuit or the State of Nevada, there is considerable authority from other jurisdictions to the effect that expert testimony is not generally required to establish bad faith or other improper handling of claims.") Defendants may dispute at trial whether Plaintiff's evidence establishes that Defendants had a specific claims-close ratio goal and, if they did, whether it affected the handling of Plaintiff's claim. But Defendants have not shown that claims-close ratio evidence is irrelevant or inadmissible under Rules 401 or 403. Accordingly, the Court will deny Defendants' Motion in Limine re: Claims-Close Ratios.

**IV.     Motion in Limine re: Per Diem Damages (Doc. 73)**

Defendants seek to preclude Plaintiff from arguing that he is entitled to or presenting evidence of per diem damages. (Doc. 73.) Defendants contend that (1) there is no evidence or rationale supporting the per diem rate previously disclosed by Plaintiff and, in fact, Plaintiff himself testified that he did not know how the per diem rate was calculated; (2) presenting speculative per diem damages would amount to improper attorney testimony; (3) the proposed per diem rates are inaccurate because Plaintiff's actual suffering has decreased over time and will likely continue to do so; and (4) Plaintiff has refused treatment that could have improved his condition. (*Id.*)

Plaintiff opposes the Motion by arguing that (1) the per diem rates previously disclosed are simply an example of a potential calculation by a jury of Plaintiff's

noneconomic damages; and (2) Plaintiff's expert testimony shows that he suffers "permanent" and "chronic" harm due to the delay in receiving benefits. (Doc. 81.) Plaintiff states that there is no basis to preclude him from arguing "how the jury *might* determine noneconomic damages in this case." (*Id*.)

"It is within the sound discretion of the trier of fact to select the formula most appropriate to compensate the injured party." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir. 1999) (internal quotation and citation omitted). "The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation" *Id*. "The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id*. The Ninth Circuit affords "substantial deference to a jury's finding of the appropriate amount of damages" and will "uphold the jury's award unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 442 F. Supp. 3d 1329, 1341 (D. Or. 2020).

In Arizona, the use of per diem damage calculation is a matter left to the sound discretion of the trial court. *Hing v. Youtsey*, 460 P.2d 646, 650 (1969). "Although damages need not be proved to a mathematical certainty, sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture." *Sedie v. United States*, No. C-08-04417 EDL, 2010 WL 1644252, at *15 (N.D. Cal. Apr. 21, 2010) (internal quotation and citation omitted).

Defendants have not presented, and the Court is not aware of, any law that precludes Plaintiff from arguing damages as he chooses, so long as those arguments are based on facts and evidence and not on speculation or conjecture. Plaintiff indicates that he intends to rely on expert testimony to establish his damages claim. The Court will exercise its discretion to permit Plaintiff to argue per diem damages and accordingly will deny Defendants' Motion in Limine re: Per Diem Damages.

. . . .

     **V.**     **Motion in Limine re: Chiropractor Cradic (Doc. 74)**

Defendants seek to limit the testimony of Chiropractor Cradic ("Cradic" or "Dr. Cradic"), one of Plaintiff's treating physicians, to solely his chiropractic care and treatment of Plaintiff. (Doc. 74.) Plaintiff received medical treatment from Cradic from approximately March to May 2017. (*Id.*) Plaintiff disclosed Cradic as an expert and provided Cradic's declaration, which contains testimony in the form of opinions about (1) the effects of Defendants' handling of Plaintiff's insurance claim on Plaintiff and the reasonableness of that handling and (2) Plaintiff's emotional and mental state while Cradic was treating him (for example, that he was "stressed" and "upset") and how Defendants' actions caused that state. (*Id.*) Defendants argue that because Cradic is qualified to testify only about his chiropractic care and treatment of Plaintiff, he should be precluded from providing testimony on matters not directly related to that care and treatment. (*Id.*) Defendants further argue that Plaintiff has disclosed a separate expert witness to testify about the reasonableness of Defendants' handling of the claim and therefore Cradic's testimony on that subject is needlessly cumulative under Rule 403. (*Id.*)

Plaintiff argues in response that Defendants misconstrue the scope of Dr. Cradic's testimony. (Doc. 82.) Plaintiff avers that the purpose of Cradic's testimony is to "confirm the nature of [Plaintiff's] injuries, testify about the benefits that [Plaintiff] needed, and describe how the delay in providing those benefits harmed his patient (as [Cradic] directly observed as a treating doctor and as an eyewitness)." (*Id.*) Plaintiff argues that Cradic, as a treating physician, may testify about his opinions on Plaintiff's work status and why those opinions were correct. (*Id.*) Plaintiff further argues that Cradic may testify as an eyewitness to Plaintiff's mental state at the time, because those opinions are not based upon expertise and are appropriate subjects for lay testimony. (*Id.*) Finally, to the extent the Court finds Defendants' arguments meritorious, Plaintiff requests an opportunity to present live testimony from Dr. Cradic in response. (*Id.*)

. . . .

The specific testimony with which Defendants take issue is as follows:
> Instead of immediately authorizing the necessary treatment that I requested, Wesco Insurance Company refused to authorize or pay for the requested treatment and refused to pay income benefits, both of which were necessary in my opinion. It is my opinion that the insurance carrier's refusal to authorize the requested treatments and pay income benefits was unreasonable.
>
> I also witnessed the unreasonable denial of income benefits. It is my opinion that Mr. Swift was restricted from work and owed lost time benefits. Nonetheless, the insurance carrier refused payment. The impact of this denial was severe. I saw him become extremely stressed, upset, angry, and short tempered with the inability to meet his daily living expenses and have financial security. This change in his emotional disposition was directly related to the fact that Mr. Swift was experiencing symptoms from an untreated, serious medical condition and also not being paid lost time benefits by the insurance carrier.

(Doc. 74 at 2-3.)

Courts have a duty to ensure that expert testimony is both relevant and reliable. *See United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Fed. R. Evid. 702 sets the standard for admissibility of expert testimony:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The expert must have "appropriate qualifications, i.e., some special knowledge, skill, experience, training or education on that subject matter" which is the subject of the testimony. *Hankey*, 203 F.3d at 1168.

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to

clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

The Court finds that Cradic's statements regarding (1) the necessity of payment of income benefits; (2) the reasonableness or unreasonableness of Defendants' handling of Plaintiff's income benefits, and (3) the effect of the delayed or denied income benefits on Plaintiff's emotional or mental state are outside the scope of Cradic's expert qualifications. However, the Court finds the remainder of Cradic's proffered testimony admissible. Cradic may testify as to his opinions regarding Plaintiff's medical treatment, including whether Defendants improperly denied Plaintiff medical treatment, Plaintiff's work restrictions due to his injury, and any other matters related to Plaintiff's injury and the care and treatment of it.

Cradic may also testify as a lay witness to his rational perceptions of Plaintiff's mental or emotional state. *See* Fed. R. Evid. 701. Defendants do not cite, and the Court is not aware of, law that would preclude an expert witness from providing lay testimony about, for example, his general observations of a patient. Defendants do not contest that Plaintiff timely disclosed Cradic as a witness; therefore, there is no indication that Defendants would be prejudiced by Cradic's lay testimony. *See, e.g., Padilla v. Beard*, No. 214CV01118KJMCKD, 2017 WL 1354565, at *3 (E.D. Cal. Apr. 13, 2017). To be clear, however, Cradic's testimony that Plaintiff's emotional state was due to "not being paid lost time benefits by the carrier" is outside the scope of Cradic's expert qualifications and is therefore inadmissible.

The Court will grant the Motion to the extent that it seeks to preclude Cradic's statements regarding Defendants' handling or payment of income benefits to Plaintiff and the effects of that handling on Plaintiff. The Motion will otherwise be denied.

**VI.    Motion in Limine re: Employee Discipline Records (Doc. 75)**

Defendants seek to preclude certain records of employee discipline from being used as an exhibit or otherwise at trial. (Doc. 75.) Defendants aver that "none of the areas

1 of discipline in the employee records at issue concern any deficiencies that are at issue in
2 this case" and therefore the records are irrelevant, confusing, and unduly prejudicial. (*Id*.)
3 Defendants argue that evidence of employee discipline is also inadmissible as a
4 subsequent remedial measure pursuant to Fed. R. Evid. 407. (*Id*.) Defendants further
5 argue that the records are impermissible character evidence pursuant to Rule 404. (*Id*.)

Plaintiff argues in response that (1) the records concern adjuster Lara, who handled Plaintiff's claim, and are therefore relevant; (2) the records are not evidence of a subsequent remedial measure; and (3) the records concern the time period at issue in this case. (Doc. 83.) The records were submitted under seal. (Doc. 78.) The disciplinary records are dated November 2, 2017 and September 28, 2018. (*Id*.) The time period of Plaintiff's claim was from February 28, 2017 to May 16, 2018, when the claim was paid. (Doc. 83.)

Fed. R. Evid. 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as. . . proving ownership, control, or the feasibility of precautionary measures.

The Ninth Circuit has upheld a district court's exclusion of evidence of employee discipline as a subsequent remedial measure pursuant to Rule 407. *See Maddox v. Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986).

As an initial matter, the Court finds the disciplinary records relevant, because they concern the same claims adjuster who handled Plaintiff's claim, they contain employee performance concerns that are potentially related to the adjuster's handling of the claim, and they partially overlap with the relevant time period of the claim. The Court further finds that the records are neither unduly prejudicial nor confusing under Rule 403, nor are they impermissible character evidence under Rule 404.

The relevant records are dated November 2, 2017 and September 28, 2018.

Plaintiff's claim was paid on May 16, 2018. Therefore, the September 28, 2018 record is a subsequent remedial measure that would have made the earlier alleged misconduct—that is, Defendants' untimely payment of Plaintiff's benefits—less likely to occur. It is therefore inadmissible to prove Defendants' culpable conduct pursuant to Rule 407. The September 18, 2018 record is admissible, however, to show "ownership, control, or the feasibility of precautionary measures" and is admissible for that purpose only.

To the extent that Plaintiff seeks to argue the applicability of the November 2, 2017 record to matters that occurred prior to November 2, 2017, the record is a subsequent remedial measure and is therefore inadmissible for that purpose. The November 2, 2017 record is admissible with respect to matters occurring before that date only for the limited purpose of showing "ownership, control, or the feasibility of precautionary measures" pursuant to Rule 407. The November 2, 2017 record is admissible in full with respect to matters occurring after that date.

Accordingly,

**IT IS ORDERED** that the pending Motions in Limine are resolved as follows:

(1) Plaintiff's Motion in Limine re: Res Judicata of ICA Findings (Doc. 70) is **granted** as to both the March 28, 2018 and August 21, 2020 awards and findings.

(2) Defendants' Motion in Limine re: Claims-Close Ratios (Doc. 72) is **denied**.

(3) Defendants' Motion in Limine re: Per Diem Damage Calculations (Doc. 73) is **denied**.

(4) Defendants' Motion in Limine re: Chiropractor Cradic (Doc. 74) is **granted in part and denied in part**. The Motion is **granted** as to Dr. Cradic's statements regarding Defendants' handling or payment of income benefits to Plaintiff. The Motion is otherwise **denied**.

(5) Defendants' Motion in Limine re: Employee Discipline Records (Doc. 75) is **granted in part and denied in part** as follows:

. . . .

a. The September 28, 2018 record is **admissible** only to show ownership, control, or the feasibility of precautionary measures. It is **inadmissible** to show Defendants' culpable conduct.

b. The November 2, 2017 record is **admissible** with respect to matters occurring **before** that date only to show ownership, control, or the feasibility of precautionary measures. The November 2, 2017 record is **admissible** in full with respect to matters occurring **after** that date.

Dated this 23rd day of February, 2021.

_____
Honorable Rosemary Márquez
United States District Judge